ORAL ARGUMENT NOT YET SCHEDULED

BRIEF AND ADDENDUM FOR APPELLEE

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 12-3048

UNITED STATES OF AMERICA,                        Appellee,

v.

ROSCOE E. MINNS,                                 Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONALD C. MACHEN JR.,
United States Attorney.

ELIZABETH TROSMAN,
CHRISELLEN R. KOLB,
STEVEN B. WASSERMAN,
*    DAVID P. SAYBOLT, VA BAR
Assistant United States Attorneys.

*    Counsel for Oral Argument

555 Fourth Street, NW, Room 8104
Washington, D.C.   20530
(202) 252-6829

Crim. No. 11-129-12 (CKK)

## CERTIFICATE OF PARTIES
## RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee, the United States of America, hereby states as follows:

A.    Parties and amici:    The parties to this appeal are Roscoe E. Minns, appellant, and the United States of America, appellee. The same parties appeared below. There are no amici.

B.    Rulings under review:    This is an appeal from a judgment of conviction before the Honorable Colleen Kollar-Kotelly for conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846. Appellant challenges the district court's failure to grant a two-point reduction of his offense level for appellant's claimed minor role in the offense pursuant to USSG §3B1.2. There is no official citation to this ruling.

C.    Related cases: Appellant was charged by superseding indictment as one of fourteen co-defendants (Appellant's Appendix at 1). Appellant pled guilty, and challenges a discrete ruling at sentencing. Thus, there are no related cases.

ii

# I N D E X

COUNTERSTATEMENT OF THE CASE ................................... 1

    A.    THE GUILTY PLEA ................................. 2

    B.    SENTENCING PROCEEDINGS .......................... 4

        1.    Presentence Investigation Report ........... 4

        2.    Sentencing Memoranda ....................... 5

        3.    The Sentencing Hearing ..................... 7

SUMMARY OF ARGUMENT ........................................... 10

ARGUMENT ...................................................... 12

I.    The district court did not commit legal error in
    denying appellant's request for a downward
    adjustment based on his role in the offense. ........ 12

    A.    Standard of Review and Applicable Legal
        Principles ................................... 12

    B.    Discussion ................................... 15

        1.    The District Court Did Not Commit Legal
            Error in Calculating Appellant's
            Guideline Range. ......................... 15

II.    The District Court Did Not Plainly Err By
    Comparing Appellant's Role To Other Participants
    In His Case. ....................................... 23

    A.    Standard of Review and Applicable Legal
        Principles ................................... 23

    B.    The District Court Did Not Plainly Err By
        Comparing Appellant's Role To Other
        Participants In His Case. ..................... 24

CONCLUSION .................................................... 26

iii

## TABLE OF AUTHORITIES

Gall v. United States, 552 U.S. 38 (2007) ..................... 13

In re Sealed Case, 349 F.3d 685 (D.C. Cir. 2003) ............. 15

* United States v. Caballero, 936 F.2d 1292
    (D.C. Cir. 1991) ................................. 14, 19, 24

United States v. Edwards, 98 F.3d 1364 (D.C. Cir. 1996) ... 13, 17

* United States v. Graham, 317 F.3d 262 (D.C. Cir. 2003) ........ 16

* United States v. Gunning, 984 F.2d 1476 (7th Cir. 1993) ....... 20

United States v. Lampkins, 47 F.3d 175 (7th Cir. 1995) ........ 16

United States v. Locke, 664 F.3d 353 (D.C. Cir. 2011) ..... 17, 24

* United States v. Mejia, 597 F.3d 1329 (D.C. Cir. 2010) ........ 24

United States v. Neal, 36 F.3d 1190 (1st Cir. 1994) ........... 16

* United States v. Olibrices, 979 F.2d 1557
    (D.C. Cir. 1992) ..................................... 15-16

United States v. Olivares, 473 F.3d 1224
    (D.C. Cir. 2006) .................................... 13, 22

United States v. Tann, 532 F.3d 868 (D.C. Cir. 2008) ...... 13, 22

United States v. Warren, 700 F.3d 528 (D.C. Cir. 2012) ..... 12-13

United States v. White, 1 F.3d 13 (D.C. Cir. 1993) ......... 14-15

* United States v. Whiting, 522 F.3d 845 (8th Cir. 2008) ........ 20

United States v. Whren, 111 F.3d 956 (D.C. Cir. 1997) ......... 24

United States v. Williams, 891 F.2d 921 (D.C. Cir. 1989) ...... 14

* Cases chiefly relied upon are marked with an asterisk.

iv

## OTHER AUTHORITIES

21 U.S.C. § 841(a)(1) ........................................... 1

21 U.S.C. § 841(b)(1)(A)(ii) ................................... 1

21 U.S.C. § 841(b)(1)(B)(ii) ................................... 2

21 U.S.C. § 846 .............................................. 1-2

USSG § 2D1.1 app. note 3(A) ................................... 20

USSG § 3B1.2 app. note 3(A) .............................. 14, 24

USSG § 3B1.2 app. note 3(C) ................................... 20

USSG § 3B1.2 app. note 4 ..................................... 14

USSG § 3B1.2 app. note 5 ..................................... 14

USSG § 3B1.2(b) ......................................... 10, 13, 15

v

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), the pertinent statutes and regulations are set forth in the Addendum to this brief.

vi

## ISSUES PRESENTED

In the opinion of the appellee, the following issues are presented on appeal:

I.    Whether the district court committed legal error by denying appellant's request for a downward departure for minor role in the offense, where the plea agreement already adjusted for appellant's role in the conspiracy by limiting appellant's relevant conduct to include only the 2 to 3.5 kilograms of cocaine that appellant personally agreed to purchase and redistribute; where appellant was recorded engaging in 117 phone conversations with his drug wholesaler over a three-month period at a time when the wholesaler was in possession of large quantities of cocaine; and where a search warrant of appellant's home yielded a loaded handgun and $20,668 in cash proceeds.

II.    Whether the district court plainly erred when, in determining whether appellant played a role that made him substantially less culpable than the average participant, it compared appellant to other participants in the charged drug conspiracy, and not to other participants in similar drug conspiracies, where defense counsel did not request the court to undertake this analysis or develop any factual predicate for it;

vii

and where this Court and the Supreme Court have not held that

such an analysis is required.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 12-3048

UNITED STATES OF AMERICA,                              Appellee,

v.

ROSCOE E. MINNS,                                       Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLEE

## COUNTERSTATEMENT OF THE CASE

By superseding indictment filed on June 16, 2011, appellant

Roscoe E. Minns was charged with one count of conspiracy to

distribute and possess with intent to distribute 5 kilograms or

more of cocaine (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846)

(App. 1; Supp. App.   1).[1]  On January 24, 2012, appellant pled

---

[1]   "App." refers to the appendix submitted with appellant's
brief.   "Tr." refers to the transcripts of the plea and
sentencing hearings, which are included in the appendix to
appellant's brief.   "Supp. App." refers to the Supplemental
Appendix filed herewith by the government.  Citations to the
U.S. Sentencing Guidelines, unless otherwise noted, are to the
                                                  (continued...)

2

guilty before the Honorable Colleen Kollar-Kotelly to one count
of conspiracy to distribute and possess with intent to
distribute 500 grams or more of cocaine (21 U.S.C.
§§ 841(b)(1)(B)(ii), 846) (1-24 Tr. 4; App. 10). On June 13,
2012, the court sentenced appellant to 70 months' incarceration
(6-13 Tr. 21; App. 35). On June 27, 2012, appellant filed a
timely notice of appeal (App. 11).

## A. THE GUILTY PLEA

This case arose from a lengthy investigation into a large
drug conspiracy involving 14 defendants. All of the cases
related to this conspiracy were assigned to Judge Kollar-
Kotelly.

On January 24, 2012, appellant pled guilty to one count of
conspiracy to distribute and possess with intent to distribute
500 grams or more of cocaine, a lesser-included offense of count
one of the indictment (1-24 Tr. 4; Supp. App. 2). Pursuant to
the plea-letter agreement, appellant agreed that his relevant
conduct included distributing or possessing with intent to
distribute at least 2 kilograms but less than 3.5 kilograms of
cocaine (Supp. App. 2 at 2). The United States agreed that

_____

(...continued)
2011 Manual, incorporating amendments effective November 1,
2011, and earlier.

3

appellant's base-offense level should be reduced by three points for acceptance of responsibility, and further agreed to request a sentence at the low end of the Guidelines (id. at 5). The parties agreed that appellant could request a two-level adjustment to his base-offense level as a minor participant pursuant to U.S.S.G. Section 3B1.2(b), but the United States remained free to oppose that motion (Supp. App. 2 at 5).

According to the statement of facts, to which appellant agreed, appellant acknowledged that he purchased "wholesale quantities" of cocaine from co-defendant William Bowman, and participated with Bowman and others in a larger conspiracy to distribute "multiple kilogram quantities of cocaine in the Washington, DC, metropolitan area between January 2009 up through and including April 26, 2011" (App. 19). Appellant agreed with Bowman to distribute 2 to 3.5 kilograms of cocaine, which cocaine appellant then redistributed to other purchasers (id. at 19-20).[2] Appellant was aware that there were other participants in the conspiracy, but he was not aware of all of their identities (id.). On June 21, 2011, a search warrant at appellant's home revealed a loaded Glock 22 .40 pistol from appellant's bedroom, and $20,668 in U.S. currency (id. at 2).

_____

[2] Appellant was distributing powdered cocaine (1-24 Tr. 11).

4

At the plea hearing, the court placed appellant under oath and confirmed the terms of the plea agreement and the factual proffer individually with the government, defense counsel and appellant (1-24 Tr. 3-45). In particular, the court ascertained that the 2 to 3.5 kilogram quantity of cocaine included in appellant's relevant conduct included only the cocaine that appellant personally agreed with Bowman to distribute, and not the cocaine Bowman may have been distributing with other conspirators (1-24 Tr. 13-21, 32).

### B.   SENTENCING PROCEEDINGS

#### 1.   Presentence Investigation Report

A Presentence Investigation Report ("PSR") was issued on April 4, 2012. According to the PSR, appellant's base-offense level was 28 (PSR at 8). Appellant was awarded a three-point reduction for acceptance of responsibility and his adjusted offense level was 25 (PSR at 8-9). The probation officer declined to award appellant an adjustment for having a minor role in the offense (id. at 7-8).[3]

---

[3]     "Mr. Minns was a significant narcotics trafficker, who obtained wholesale quantities of cocaine from co-defendant Bowman over a sustained period. In our assessment, Mr. Minns was an average participant. Thus he does not qualify for an aggravating or mitigating role adjustment pursuant to USSG §§ 3B1.1 and 3B1.2." (PSR at 7.)

Appellant had six criminal-history points, including two points for a 2000 Maryland conviction in which appellant possessed a loaded handgun on the grounds of an elementary school, and two points for a 2001 Maryland conviction in which appellant possessed a loaded handgun when he threatened his daughter's mother (PSR at 11-12). His criminal-history category was III (PSR at 13). His guideline range, as calculated in the PSR, was 70 to 87 months' incarceration (PSR at 21).

## 2. Sentencing Memoranda

On April 19, 2012, the United States filed its sentencing memorandum (App. 10, 21-28). The United States agreed to the three-point reduction for acceptance of responsibility, and allocuted for a sentence of 70 months at the bottom of the guideline range (App. 21-22).

The government opposed awarding appellant the minor-role adjustment, however, on the strength of five facts. One, appellant was recorded on the wiretap having 117 conversations "pertinent" to the investigation with co-defendant Bowman from January 13, 2011, to April 18, 2011 (App. 25).[4]    Two, the "substance" as well as the "frequency" of these conversations

---

4    Although the conspiracy ran from January 2009 to April 2011, the first day of the wiretap was January 13, 2011 (App. 25).

6

established that (a) appellant was trafficking in "kilogram quantities of cocaine" and (b) "his participation in the conspiracy was not confined to a short period of time" (id.). Three, physical surveillance, in addition to the wiretap evidence, established that appellant had been meeting with Bowman at a time when Bowman was known to be in possession of large quantities of cocaine (id.). Four, a day after being observed meeting with Bowman, appellant led police on a high-speed chase and crashed his car (id.). Five, a search warrant of appellant's home yielded the loaded gun and over $20,000 in cash. All of these facts, suggested the government, indicated that appellant was a "major participant in narcotics trafficking," and not a person occupying a minor role (id. at 25-26).[5]

On April 20, 2012, appellant filed his sentencing memorandum (App. 10, 29-33). Appellant acknowledged that, absent the minor-role adjustment, his guideline range would be 70 to 87 months' incarceration, and that, with the adjustment,

---

[5] In the event the court granted the two-point reduction for minor role, appellant's guideline range would become 57 to 71 months' incarceration, with an effective range of 60 to 71 months' incarceration because of the mandatory-minimum term of five years' incarceration for the offense (App. 23, 26 n.1).

7

appellant's effective guideline range would be 60 to 71 months
(App. 30-32).

In support of his request for a minor-role adjustment,
appellant claimed that he had participated in the conspiracy for
only three months of a conspiracy spanning more than two years
(App. 31). He claimed to have stopped participating in the
conspiracy of his own accord in April 2011 (id.).[6] He also
argued that "[m]any of the 117 calls in the case do not contain
information about dealing, though some do give indications of
such activity" (id.).

### 3. The Sentencing Hearing

The district court started by calculating the applicable
guideline range. With respect to appellant's request for a
minor-role adjustment, the court explained that it had reviewed
section 3B1.2 of the Guidelines as well as the application notes
(6-13 Tr. 6). Appellant's relevant conduct only included the
drugs with which he was personally involved (id.). The fact
that appellant had pled to a lesser-included offense did not
necessarily reflect appellant's role, according to the
application notes (id.). The question was whether appellant was

---

[6]    Appellant did not elaborate on this factual claim, and it
was not mentioned again by any party or the court at sentencing.
Appellant also does not mention this factual claim in his brief.

8

an "average participant" or "substantially less culpable than the average participant" (id.).

In making its fact-based determination, the court looked to the other co-defendants in terms of amount of drugs and the transactions (6-13 Tr. 6). The court acknowledged the factual claims made by the parties in their sentencing memoranda yet also observed that it had a "limited factual record" (id. at 6-7).

With respect to other participants, the court grouped three co-defendants together -- appellant, Shawn Lucas, and Joseph Tolbert (6-13 Tr. 7). All three had relevant conduct encompassing the same quantity of drugs -- 2 to 3.5 kilograms of cocaine (id. at 7-8). Although Lucas ultimately turned out to be a career offender by virtue of his criminal history, the government had initially opposed a minor-role adjustment for him and the probation officer had not recommended it (id. at 8). Tolbert, like appellant, was in criminal-history category III (id.). However, the government had not opposed the minor-role adjustment for Tolbert because there was no gun in Tolbert's

9

case (id.). The court had awarded Tolbert the minor-role adjustment, but "[i]t was a very close call" (id.).[7]

The court distinguished appellant from Tolbert because: (1) there was a gun in appellant's case; (2) appellant had two prior gun convictions; and (3) there was "intense contact" between appellant and co-defendant Bowman at a time when Bowman was viewed as having access to large amounts of drugs (6-13 Tr. 8). The court acknowledged appellant's argument that he had only dealt with Bowman and had only participated in the conspiracy for three months (id. at 9). But the intensity of the contact weighed against those limitations (id.). Also, appellant's relevant conduct only included drugs directly connected to him, and did not include drugs otherwise attributable to the larger conspiracy (id.).

In sum, the court concluded that the evidence was in "equipoise" as to whether appellant was substantially less culpable than the average participant (6-13 Tr. 9). Because it was appellant's burden to establish he was entitled to the

---

[7]    A fourth co-defendant, Earl Charles, had received a minor-role adjustment, but his relevant conduct, encompassing only 400 to 500 grams of cocaine, was less, and he had a different criminal history (6-13 Tr. 8). Charles was "clearly a minor participant" (id. at 9).

adjustment, he had not met his burden (id.).[8] Accordingly, the court denied the requested minor-role adjustment, and sentenced appellant to the lower end of the applicable guideline range (id.).[9]

## SUMMARY OF ARGUMENT

In denying appellant's request for a minor-role adjustment to his base-offense level pursuant to USSG § 3B1.2(b), the district court correctly concluded that, based on the totality of the facts the parties had put into the record, appellant had not proffered sufficient evidence to meet his burden of proving he was entitled to the adjustment. In particular, the court considered that appellant's relevant conduct included only the 2 to 3.5 kilograms of cocaine that he personally had agreed to purchase and redistribute, and not the cocaine distributed elsewhere in the conspiracy. The court compared appellant's

---

[8]   As early as September 13, 2011, the government indicated that it had provided substantially all discovery to defendants (App. 5). At no time during the sentencing hearing did appellant ask for more time to develop the factual record. Nor did appellant suggest that the government was in possession of undisclosed facts that would have entitled him to a minor-role adjustment.

[9]   The court also signed a consent forfeiture order, in which appellant agreed to forfeit the $20,668 in cash recovered from his home as part of the $50,000 for which appellant was liable as proceeds of his offense (Supp. App. 3 at 2).

11

relevant conduct to that of three other participants in the conspiracy, one of whom had received the minor-role adjustment in what had been a "very close call" for the court. The court accepted appellant's contention that he had only participated in the conspiracy for three months. The court distinguished appellant's role from that of his co-defendant, however, on three grounds: (1) appellant had been in intense contact -- 117 recorded phone calls and physical surveillance -- with his drug supplier at a time when the drug supplier was in possession of large quantities of cocaine; (2) appellant had possessed a loaded gun and $20,668 in cash; and (3) appellant had two prior gun convictions. By contrast, the co-defendant who had received the minor-role adjustment had no gun in his case. The district court ultimately concluded that, because the evidence was in equipoise, appellant had not met his burden of demonstrating he was entitled to the minor-role adjustment. Given the due deference this Court owes applications of the Guidelines to facts by the district court, appellant's challenge to the court's decision should be denied.

Appellant also claims that the court plainly erred in its analysis of the minor-role adjustment by comparing appellant's culpability to other participants in the charged conspiracy,

12

rather than to other participants in all similar drug conspiracies. But the court followed the accepted methodology in this Circuit on this point. In any event, appellant never presented any factual predicate to the district court in support of his claim. And, he fails to demonstrate how the alternate methodology he urges would benefit him.

## ARGUMENT

I. **The district court did not commit legal error in denying appellant's request for a downward adjustment based on his role in the offense.**

Appellant contends that the district court committed legal error by failing to grant a downward adjustment to his base-offense level for minor role in the offense. Because the court properly denied this adjustment based on the undisputed facts of the case, appellant's claim lacks merit.

A. **Standard of Review and Applicable Legal Principles**

Sentencing challenges are evaluated under a two-step process. United States v. Warren, 700 F.3d 528, 531 (D.C. Cir. 2012) (citation omitted). First, the Court determines whether the district court committed significant procedural error. Id. This kind of error "encompasses not only incorrect legal interpretations of the Guidelines, but also incorrect applications of the Guidelines to the facts." United States v.

Olivares, 473 F.3d 1224, 1226 (D.C. Cir. 2006); see also Gall v. United States, 552 U.S. 38, 51 (2007) (procedural error includes improperly calculating the guidelines range). Second, the Court reviews the "overall reasonableness of the sentence to ensure that it is objectively reasonable in light of the sentencing factors in 18 U.S.C. § 3553(a)." Warren, 700 F.3d at 531 (internal quotation and citation omitted).

Here, appellant claims only that the district court erred by failing to grant him a minor-role adjustment; he does not claim his sentence is otherwise unreasonable (Appellant's Brief "App. Br." at 11-13). This Court gives "due deference" to a district court's decision that specific conduct warrants an adjustment to the base-offense level under the Guidelines. United States v. Tann, 532 F.3d 868, 874 (D.C. Cir. 2008). A district court's factual findings are reviewed for clear error. United States v. Edwards, 98 F.3d 1364, 1371 (D.C. Cir. 1996).

Under USSG § 3B1.2, a defendant's offense level may be reduced by (a) four levels if the defendant was a minimal participant in the offense, or (b) two levels if the defendant was a minor participant. "In cases falling between (a) and (b)," Section 3B1.2 provides for a three-level decrease in the offense level. A minor participant is "a defendant who plays a

14

part in committing the offense that makes him substantially less culpable than the average participant," USSG § 3B1.2, app. note 3(A), "but whose role could not be described as minimal."[10]    Id. at n.5.    "The application of section 3B1.2 is inherently factbound and largely committed to the discretion of the trial judge."    United States v. Caballero, 936 F.2d 1292, 1299 (D.C. Cir. 1991).

Appellant "bears the burden of proof under those sections of the Guidelines that define mitigating factors."    United States v. White, 1 F.3d 13, 18 (D.C. Cir. 1993) (quotation omitted).    This Court has recognized that "the district court is in the best position to assess the defendant's relative culpability vis-a-vis other participants in the offense."    United States v. Williams, 891 F.2d 921, 926 (D.C. Cir. 1989); see also Caballero, 936 F.2d at 1299.

---

[10]    Section 3B1.2(a) ("minimal participant") is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. . . . [A] defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."    USSG § 3B1.2 app. note 4.

15

B.    Discussion

  1.    The District Court Did Not Commit Legal
     Error    in    Calculating    Appellant's
     Guideline Range.

  The district court properly denied appellant's requested
sentencing adjustment because appellant failed to meet his
burden of demonstrating that he was a "minor participant" under
Section 3B1.2(b). See White, 1 F.3d at 18. As an initial
matter, this Court has held that "the correct measure of a
section 3B1.2 downward adjustment to a defendant's base-offense
level is the relevant conduct that establishes his base offense
level," In re Sealed Case, 349 F.3d 685, 692 (D.C. Cir. 2003),
and "a defendant is not entitled to have her sentence reduced
for a minimal role in relevant conduct that had no part in the
calculation of the base level." United States v. Olibrices, 979
F.2d 1557, 1561 (D.C. Cir. 1992). Here, the district court took
pains to confirm that appellant's base-offense level included
only drug quantities that he personally agreed to purchase from
the wholesaler Bowman and redistribute to others (1-24 Tr. 13-
18, 21). Appellant admitted that this quantity was 2 to 3.5
kilograms of cocaine, and that his relevant conduct did not
include drugs for which other persons in the conspiracy were
responsible (id. at 17-18, 21). Appellant thus was not entitled

16

to receive a downward adjustment for a mitigating role in the overall conspiracy because his offense level was not based on the drug quantities attributable to the overall conspiracy. See United States v. Graham, 317 F.3d 262, 272 (D.C. Cir. 2003) (minor-role adjustment properly denied where relevant conduct included only drug quantities for which defendant was personally responsible); Olibrices, 979 F.2d at 1561 (same); United States v. Lampkins, 47 F.3d 175, 180-81 (7th Cir. 1995) (minor-role adjustment properly denied where defendant sentenced only for drugs with which he was directly involved); United States v. Neal, 36 F.3d 1190, 1211 (1st Cir. 1994) (defendant did not have minor role in offenses of conviction on which sentence was based).

In any event, appellant did not establish that his role was minor. According to the factual proffer, to which appellant agreed, appellant personally agreed to purchase and redistribute 2 to 3.5 kilograms of cocaine (App. 19-20). He was in possession of a loaded handgun and over $20,000 in cash that he agreed to forfeit as proceeds (App 20; Supp. App. 2 at 2). Moreover, it was undisputed at sentencing that from January to April 2011, appellant engaged in 117 phone calls with his supplier, co-defendant Bowman, and it was undisputed that the

17

substance of the calls pertained to drug trafficking (6-13 Tr. 7). Finally, the court recognized that appellant's relevant conduct only included drugs for which he was personally accountable (id. at 9). Given the due deference that this Court owes to the district court's application of the Guidelines to these facts, the court's decision to deny appellant the minor-role adjustment should be affirmed.[11]

_____

[11]    Citing two amendments to the application notes to Section 3B1.2 that became effective November 1, 2011, appellant complains that the district court "did not signal a realization that the standards for awarding these role adjustments had undergone any change" (App. Br. at 9, 12-14). Appellant did not raise this claim before the district court, and it is reviewed by this Court for plain error. United States v. Locke, 664 F.3d 353, 357 (D.C. Cir. 2011). Appellant cannot establish any error, let alone plain error.

First, the court started the sentencing by stating that it had reviewed Section 3B1.2 and the application notes thereto (6-13 Tr. 6). Appellant points to no authority requiring the court to discuss changes in application notes from the previous year's Guidelines. The court's decision not to do so, therefore, cannot be plain error. Cf. Edwards, 98 F.3d at 1370 (declining to require district court to use "magic words" in assessing defendant's role as long as the district court "assess[es] the defendant's role in the specific criminal conduct and [does] not gauge his culpability generically").

Second, appellant does not explain how the amendments to the application notes resulted in legal error in his case. He urges only that the district court erred in finding the evidence regarding the adjustment was in equipoise (App. Br. at 17). For reasons stated in the text, that argument lacks merit.

18

Moreover, the court concluded that appellant did not meet his burden of establishing that he was substantially less culpable than the average participant in the case (6-13 Tr. 9). Like the two other co-defendants with whom the court grouped him, appellant was personally responsible for 2 to 3.5 kilograms of cocaine (id. at 7-8).[12] Although one of the three co-defendants, Lucas, ultimately proved ineligible for the adjustment due to his status as a career offender, the government had initially opposed the adjustment and the probation officer declined to recommend it (id. at 8). The government and the probation officer also opposed a minor-role adjustment for the second co-defendant, Tolbert, who was also in criminal-history category III, like appellant (id.). Tolbert had received the adjustment, but "[i]t was a very close call" for the court (id.). The court distinguished Tolbert's eligibility for the adjustment by noting that appellant had a gun, two prior gun convictions, and "intense contact" with the wholesaler at a time when the wholesaler was known to have access to large amounts of cocaine (id. at 8-9).

---

[12]    By contrast, a fourth co-defendant who was responsible for only 400 to 500 grams of cocaine was "clearly a minor participant" (6-13 Tr. 9).

Appellant urges, nonetheless, that the court erred by finding that the evidence that appellant was entitled to the minor-role adjustment was in "equipoise" (App. Br. at 16). But the sole fact that he proffers to meet his burden, is his claim that he only participated in the conspiracy from January to April 2011 (App. Br. at 15-18; App. 31; 6-13 Tr. 12). The court appeared to accept this factual claim (6-13 Tr. 6, 9).[13] Even so, it is hard to imagine that this fact standing alone could suffice to carry appellant's burden. Appellant proffered nothing to mitigate his role, even during the alleged three-month period. See, e.g., Cabellero, 936 F.2d at 1292 (defendant's status as "courier" is not sufficient but could support "minor" role adjustment). Nor could he. He admitted in the factual proffer to purchasing 2 to 3.5 kilograms of cocaine

---

[13] The district court may have assumed, without deciding, that appellant's role in the conspiracy was limited to three months (6-13 Tr. 6, 9). The United States had argued in its sentencing memorandum that the substance and intensity of the contacts over that three-month period proved that appellant's participation in the conspiracy was not limited to that short period of time (App. 25). The government also pointed out that the wiretap had only commenced in January 2011 (id.), thus permitting an inference by the court that earlier participation in the conspiracy by appellant would not have been recorded. Indeed, it would be difficult to imagine a conspirator commencing his participation in January 2011 and immediately "trafficking in kilogram quantities of cocaine" (id.).

20

personally and then "redistributing" it to third parties (App. 19-20).

Appellant maintains that there was "nothing probative" to the facts the court weighed in the balance: the loaded gun, the prior gun convictions, and the "intense contact" with the wholesaler Bowman (App. Br. at 16). Appellant concedes that guns and cash are tools of the trade, but suggests that even a minor participant in a drug conspiracy could possess these items (id.). Although it is true that even a street-level dealer may possess a gun, the possession of the loaded gun in combination with the $20,668 in cash proceeds suggests a role further up the chain of distribution. This is precisely the kind of "fact-based determination" "based on the totality of the circumstances" that the Guidelines oblige the district court to make. USSG § 3B1.2 app. note 3(C); see also USSG § 2D1.1 app. note 3(A) ("The enhancement for weapon possession . . . reflects the increased danger of violence when drug traffickers possess weapons.). See, e.g., United States v. Whiting, 522 F.3d 845, 851 (8th Cir. 2008) (affirming denial of mitigating-role adjustment in drug conspiracy, in part, because defendant "knew of and moved guns around the house"); United States v. Gunning, 984 F.2d 1476, 1484-85 (7th Cir. 1993) (affirming denial of

minor-role adjustment in drug conspiracy, in part, because defendant, who did not sell drugs herself, "carried a gun and loaded magazine clip in her purse").

Appellant similarly dismisses the wiretap evidence, reasoning that "the sheer number of conversations, without more, means nothing logically" (App. Br. at 17). Appellant asserts that "[w]ithout a proffer of the content of the conversations, the mere fact that there were many of them should not have deprived Minns of a minor role adjustment" (id.). But the content of the calls was known to the parties at sentencing, and there was little factual dispute about their content.[14] The calls were also corroborated by physical surveillance (App. 25). In any event, the court did not clearly err in finding that the "intense contact" between appellant and Bowman at a time when Bowman had "access to large amounts of drugs," (6-13 Tr. 8)

---

[14] The government told the court that "the frequency of phone contact and the substance of that contact is indicative of an individual who was purchasing substantial quantities of cocaine from Mr. Bowman. And when I say that I mean anywhere from quarter kilo quantities to kilogram quantities of cocaine." (6-13 Tr. 11) (emphasis added). For his part, appellant's counsel acknowledged reviewing all of the calls with his client (id. at 12). Some calls, according to counsel, were brief "like 'I'll call you back in a minute'" and some were the kind "that got our attention and [were] part of what led to this happening" (id.). Counsel estimated that there were 13 to 17 meetings between Bowman and appellant referenced in the calls from January to April 2011 (id.).

22

militated against appellant's request for a minor-role adjustment.[15]

In sum, the district court conducted an inherently factbound inquiry and concluded that, based on the facts the parties had put into the record, appellant had not proffered sufficient evidence to meet his burden of proving he was entitled to a two-point adjustment as a "minor participant" under Section 3B1.2 of the Guidelines. Given the due deference this Court owes applications of the guidelines to facts by the

---

[15]  The cases cited by appellant do not aid him. In Tann, 532 F.3d at 875, the sentencing court had erred by finding that Tann had a job that required her to exercise "professional or managerial discretion" within the meaning of Section 3B1.3 of the Guidelines. In Olivares, 473 F.3d at 1228-29, the sentencing court properly denied Olivares an adjustment as a "minimal participant" in a conspiracy to commit bank robberies.

Appellant appears to cite these cases as illustrations of the manner in which "district courts . . . consider carefully the evidence in support of and in opposition to particularized role assessments" (App. Br. at 14). By contrast, he claims that, in this case, "the district court repeatedly expressed the view that there was not enough information before it to rule on appellant's request for minor participant treatment" (id. at 15). But the court never made any such statement. The court observed that it had a "limited factual record here" (6-13 Tr. at 7), but nowhere did the court say it had insufficient facts to proceed. In fact, the court specifically noted that it was appellant's burden to demonstrate facts that entitled him to the adjustment, and he had failed to do so (id. at 9).

23

district court, appellant's challenge to the court's decision
should be denied.[16]

II. The District Court Did Not Plainly Err By
Comparing Appellant's Role To Other Participants
In His Case.

Appellant claims that the district court plainly erred by

comparing appellant's role only to those of other participants

in his drug conspiracy, and not to participants in other similar

drug conspiracies (App. Br. at 18). This argument lacks merit

and should be denied.

A. Standard of Review and Applicable Legal
Principles

Because appellant failed to raise this issue before the

district court, his claim is reviewed for plain error. Warren,

___

[16]   To the extent that appellant suggests that the government
withheld information that would have entitled appellant to a
minor-role adjustment, that claim has no record support (App.
Br. at 17-18). Full discovery had been provided prior to
appellant's plea (App. 5 (9/13/2011 entry)). The government is
aware of no instance in the record, and appellant points to
none, in which appellant's counsel claimed the government was in
possession of any favorable facts. Nor did defense counsel ever
ask the court's assistance in obtaining such information.
Indeed, appellant has not identified any facts that were unknown
to him at sentencing and that would have advanced his legal
claims. Moreover, to the extent that appellant intimates that
the timing of his plea and sentencing prevented the district
court from making an accurate assessment of his relative
culpability (App. Brief at 17-18), his claim fails. Appellant
could have sought a continuance and, even now, does not point to
any facts that would have undermined the district court's
decision.

24

700 F.3d at 531; United States v. Locke, 664 F.3d 353, 357 (D.C. Cir. 2011). Appellant concedes as much (App. Br. at 20 n.12).

> B. The District Court Did Not Plainly Err By Comparing Appellant's Role To Other Participants In His Case.

Application note 3(a) of Section 3B1.2 of the Guidelines directs the court to assess whether the defendant had a role "that makes him substantially less culpable than the average participant." Appellant concedes that in this Circuit, the prevailing "methodology" is to compare the defendant to other "participants" in his case, and not to "participants" in other similar conspiracies (App. Br. at 18-19). Appellant is correct. See Cabellero, 936 F.2d at 1299 (holding that relevant conduct for assessing minor role must involve more than one "participant" in the case, and defendant's conduct must be relatively minor compared to "the other participant(s)"); see, e.g., United States v. Mejia, 597 F.3d 1329, 1343 (D.C. Cir. 2010) (comparing defendant's participation, for purposes of minor-role adjustment, to two co-defendants in drug conspiracy).[17]

---

[17] To the extent appellant now asks this Court to alter its view of the minor-participant adjustment, he may not do so under the auspices of plain-error review. Cf. United States v. Whren, 111 F.3d 956, 960 (D.C. Cir. 1997).

Even assuming, arguendo, that the district court plainly erred in following a methodology established in this Circuit, appellant cannot prevail on his claim because he makes no showing of how an alternate methodology would benefit him. Appellant presented no factual basis for such a comparison before the district court.[18]    He does not explain how a methodology comparing his participation in this case to participants in other similar drug conspiracies would result in a conclusion that he is entitled to a minor-role adjustment.[19] Accordingly, appellant cannot establish any substantial prejudice or manifest injustice as required to obtain relief under the exacting plain-error standard.

_____

[18]    He cites several secondary sources relying on data compiled by the Transactional Records Access Clearinghouse (TRAC), but does not suggest that any of this data bears directly on sentencing of defendants claiming mitigating role adjustments (App. Br. at 19).

[19]    In fact, appellant offers an example that arguably undercuts his claim. Appellant makes the policy argument that "[t]here is also a danger that precisely the same conduct that results in a minor role in districts that handle many serious drug conspiracies would result in no role adjustment or even an enhanced sentence in districts where drug conspiracies tend to be smaller" (App. Br. at 19). If appellant's case were compared to drug conspiracies in smaller cities, appellant's participation in a conspiracy in a large metropolitan area such as Washington, D.C., may well doom any hope for a minor-role adjustment.

26

## CONCLUSION

WHEREFORE, the government respectfully submits that the sentence of the district court should be affirmed.

Respectfully submitted,

RONALD C. MACHEN JR.,
United States Attorney.

ELIZABETH TROSMAN,
CHRISELLEN R. KOLB,
STEVEN B. WASSERMAN,
Assistant United States Attorneys.

_____/s/_____

DAVID P. SAYBOLT, VA BAR *
Assistant United States Attorney
555 Fourth Street, N.W., Room 8104
Washington, D.C.  20530
(202) 252-6829

* Application for admission to the
  District of Columbia Circuit
  pending.

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(a)(7)(C) that this brief contains 5,607 words and that it is filed in Courier New, a monospace font.

/s/

DAVID P. SAYBOLT
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of February, 2013, I caused the foregoing Brief and Addendum for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Sylvia Royce, Esq.

/s/

DAVID P. SAYBOLT
Assistant United States Attorney

# Addendum for Appellee

# I N D E X

21 U.S.C. § 841(a)(1) ........................................ A-1

21 U.S.C. § 841(b)(1)(A)(ii) ................................ A-1

21 U.S.C. § 841(b)(1)(B)(ii) ................................ A-3

USSG § 2D1.1 app. note 3(A) ................................ A-12

Westlaw.                                                          **A-1**

21 U.S.C.A. § 841

▷

**Effective: August 3, 2010**

United States Code Annotated Currentness
  Title 21. Food and Drugs (Refs & Annos)
    Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)
      ᵇ Subchapter I. Control and Enforcement
        ᵇ Part D. Offenses and Penalties
          →→ **§ 841. Prohibited acts A**

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

  **(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

  **(2)** to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

(b) Penalties

Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

  **(1)(A)** In the case of a violation of subsection (a) of this section involving--

    **(i)** 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

    **(ii)** 5 kilograms or more of a mixture or substance containing a detectable amount of--

      **(I)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

      **(II)** cocaine, its salts, optical and geometric isomers, and salts of isomers;

      **(III)** ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

21 U.S.C.A. § 841

**(IV)** any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

**(iii)** 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

**(iv)** 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

**(v)** 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

**(vi)** 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

**(vii)** 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight; or

**(viii)** 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. Notwithstanding section 3583 of Title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eli-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

21 U.S.C.A. § 841

gible for parole during the term of imprisonment imposed therein.

(B) In the case of a violation of subsection (a) of this section involving--

(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

(ii) 500 grams or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight; or

(viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

**(C)** In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

**(D)** In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(E)(i)** Except as provided in subparagraphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,500,000 if the defendant is other than an individual, or both.

**(ii)** If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 30 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

**(iii)** Any sentence imposing a term of imprisonment under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(2)** In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

**(3)** In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

21 U.S.C.A. § 841

individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such persons shall be sentenced to a term of imprisonment of not more than 4 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph may, if there was a prior conviction, impose a term of supervised release of not more than 1 year, in addition to such term of imprisonment.

**(4)** Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18.

**(5)** Any person who violates subsection (a) of this section by cultivating or manufacturing a controlled substance on Federal property shall be imprisoned as provided in this subsection and shall be fined any amount not to exceed--

**(A)** the amount authorized in accordance with this section;

**(B)** the amount authorized in accordance with the provisions of Title 18;

**(C)** $500,000 if the defendant is an individual; or

**(D)** $1,000,000 if the defendant is other than an individual;

or both.

**(6)** Any person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land, and, by such use--

**(A)** creates a serious hazard to humans, wildlife, or domestic animals,

**(B)** degrades or harms the environment or natural resources, or

**(C)** pollutes an aquifer, spring, stream, river, or body of water,

shall be fined in accordance with title 18, United States Code, or imprisoned not more than five years, or both.

**(7) Penalties for distribution. (A) In general.** Whoever, with intent to commit a crime of violence, as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

defined in section 16 of Title 18 (including rape), against an individual, violates subsection (a) of this section by distributing a controlled substance or controlled substance analogue to that individual without that individual's knowledge, shall be imprisoned not more than 20 years and fined in accordance with Title 18.

**(B) Definitions.** For purposes of this paragraph, the term "without that individual's knowledge" means that the individual is unaware that a substance with the ability to alter that individual's ability to appraise conduct or to decline participation in or communicate unwillingness to participate in conduct is administered to the individual.

(c) Offenses involving listed chemicals

Any person who knowingly or intentionally--

**(1)** possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

**(2)** possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter; or

**(3)** with the intent of causing the evasion of the recordkeeping or reporting requirements of section 830 of this title, or the regulations issued under that section, receives or distributes a reportable amount of any listed chemical in units small enough so that the making of records or filing of reports under that section is not required;

shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical, or both.

(d) Boobytraps on Federal property; penalties; "boobytrap" defined

**(1)** Any person who assembles, maintains, places, or causes to be placed a boobytrap on Federal property where a controlled substance is being manufactured, distributed, or dispensed shall be sentenced to a term of imprisonment for not more than 10 years or fined under Title 18, or both.

**(2)** If any person commits such a violation after 1 or more prior convictions for an offense punishable under this subsection, such person shall be sentenced to a term of imprisonment of not more than 20 years or fined under Title 18, or both.

**(3)** For the purposes of this subsection, the term "boobytrap" means any concealed or camouflaged device de-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

signed to cause bodily injury when triggered by any action of any unsuspecting person making contact with the device. Such term includes guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes, and lines or wires with hooks attached.

(e) Ten-year injunction as additional penalty

In addition to any other applicable penalty, any person convicted of a felony violation of this section relating to the receipt, distribution, manufacture, exportation, or importation of a listed chemical may be enjoined from engaging in any transaction involving a listed chemical for not more than ten years.

(f) Wrongful distribution or possession of listed chemicals

**(1)** Whoever knowingly distributes a listed chemical in violation of this subchapter (other than in violation of a recordkeeping or reporting requirement of section 830 of this title) shall, except to the extent that paragraph (12), (13), or (14) of section 842(a) of this title applies, be fined under Title 18 or imprisoned not more than 5 years, or both.

**(2)** Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have not been adhered to, if, after such knowledge is acquired, such person does not take immediate steps to remedy the violation shall be fined under Title 18 or imprisoned not more than one year, or both.

(g) Internet sales of date rape drugs

**(1)** Whoever knowingly uses the Internet to distribute a date rape drug to any person, knowing or with reasonable cause to believe that--

**(A)** the drug would be used in the commission of criminal sexual conduct; or

**(B)** the person is not an authorized purchaser;

shall be fined under this subchapter or imprisoned not more than 20 years, or both.

**(2)** As used in this subsection:

**(A)** The term "date rape drug" means--

**(i)** gamma hydroxybutyric acid (GHB) or any controlled substance analogue of GHB, including gamma

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

butyrolactone (GBL) or 1,4-butanediol;

(ii) ketamine;

(iii) flunitrazepam; or

(iv) any substance which the Attorney General designates, pursuant to the rulemaking procedures pre-scribed by section 553 of Title 5, to be used in committing rape or sexual assault.

The Attorney General is authorized to remove any substance from the list of date rape drugs pursuant to the same rulemaking authority.

(B) The term "authorized purchaser" means any of the following persons, provided such person has ac-quired the controlled substance in accordance with this chapter:

(i) A person with a valid prescription that is issued for a legitimate medical purpose in the usual course of professional practice that is based upon a qualifying medical relationship by a practitioner registered by the Attorney General. A "qualifying medical relationship" means a medical relationship that exists when the practitioner has conducted at least 1 medical evaluation with the authorized purchaser in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The preceding sentence shall not be construed to imply that 1 medical evaluation demonstrates that a prescription has been issued for a legitimate medical purpose within the usual course of professional practice.

(ii) Any practitioner or other registrant who is otherwise authorized by their registration to dispense, pro-cure, purchase, manufacture, transfer, distribute, import, or export the substance under this chapter.

(iii) A person or entity providing documentation that establishes the name, address, and business of the person or entity and which provides a legitimate purpose for using any "date rape drug" for which a pre-scription is not required.

(3) The Attorney General is authorized to promulgate regulations for record-keeping and reporting by persons handling 1,4-butanediol in order to implement and enforce the provisions of this section. Any record or report required by such regulations shall be considered a record or report required under this chapter.

(h) Offenses involving dispensing of controlled substances by means of the Internet

(1) In general

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

21 U.S.C.A. § 841

It shall be unlawful for any person to knowingly or intentionally--

  (A) deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter; or

  (B) aid or abet (as such terms are used in section 2 of Title 18) any activity described in subparagraph (A) that is not authorized by this subchapter.

(2) Examples

Examples of activities that violate paragraph (1) include, but are not limited to, knowingly or intentionally--

  (A) delivering, distributing, or dispensing a controlled substance by means of the Internet by an online pharmacy that is not validly registered with a modification authorizing such activity as required by section 823(f) of this title (unless exempt from such registration);

  (B) writing a prescription for a controlled substance for the purpose of delivery, distribution, or dispensation by means of the Internet in violation of section 829(e) of this title;

  (C) serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the dispensing of a controlled substance in a manner not authorized by sections 823(f) of this title or 829(e) of this title;

  (D) offering to fill a prescription for a controlled substance based solely on a consumer's completion of an online medical questionnaire; and

  (E) making a material false, fictitious, or fraudulent statement or representation in a notification or declaration under subsection (d) or (e), respectively, of section 831 of this title.

(3) Inapplicability

  (A) This subsection does not apply to--

    (i) the delivery, distribution, or dispensation of controlled substances by nonpractitioners to the extent authorized by their registration under this subchapter;

    (ii) the placement on the Internet of material that merely advocates the use of a controlled substance or includes pricing information without attempting to propose or facilitate an actual transaction involving a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

21 U.S.C.A. § 841

controlled substance; or

**(iii)** except as provided in subparagraph (B), any activity that is limited to--

**(I)** the provision of a telecommunications service, or of an Internet access service or Internet information location tool (as those terms are defined in section 231 of Title 47); or

**(II)** the transmission, storage, retrieval, hosting, formatting, or translation (or any combination thereof) of a communication, without selection or alteration of the content of the communication, except that deletion of a particular communication or material made by another person in a manner consistent with section 230(c) of Title 47 shall not constitute such selection or alteration of the content of the communication.

**(B)** The exceptions under subclauses (I) and (II) of subparagraph (A)(iii) shall not apply to a person acting in concert with a person who violates paragraph (1).

(4) Knowing or intentional violation

Any person who knowingly or intentionally violates this subsection shall be sentenced in accordance with subsection (b).

CREDIT(S)

(Pub.L. 91-513, Title II, § 401, Oct. 27, 1970, 84 Stat. 1260; Pub.L. 95-633, Title II, § 201, Nov. 10, 1978, 92 Stat. 3774; Pub.L. 96-359, § 8(c), Sept. 26, 1980, 94 Stat. 1194; Pub.L. 98-473, Title II, §§ 224(a), 502, 503(b)(1), (2), Oct. 12, 1984, 98 Stat. 2030, 2068, 2070; Pub.L. 99-570, Title I, §§ 1002, 1003(a), 1004(a), 1005(a), 1103, Title XV, § 15005, Oct. 27, 1986, 100 Stat. 3207-2, 3207-5, 3207-6, 3207-11, 3207-192; Pub.L. 100-690, Title VI, §§ 6055, 6254(h), 6452(a), 6470(g), (h), 6479, Nov. 18, 1988, 102 Stat. 4318, 4367, 4371, 4378, 4381; Pub.L. 101-647, Title X, § 1002(e), Title XII, § 1202, Title XXXV, § 3599K, Nov. 29, 1990, 104 Stat. 4828, 4830, 4932; Pub.L. 103-322, Title IX, § 90105(a), (c), Title XVIII, § 180201(b)(2)(A), Sept. 13, 1994, 108 Stat. 1987, 1988, 2047; Pub.L. 104-237, Title II, § 206(a), Title III, § 302(a), Oct. 3, 1996, 110 Stat. 3103, 3105; Pub.L. 104-305, § 2(a), (b)(1), Oct. 13, 1996, 110 Stat. 3807; Pub.L. 105-277, Div. E, § 2(a), Oct. 21, 1998, 112 Stat. 2681-759; Pub.L. 106-172, §§ 3(b)(1), 5(b), 9, Feb. 18, 2000, 114 Stat. 9, 10, 13; Pub.L. 107-273, Div. B, Title III, § 3005(a), Title IV, § 4002(d)(2)(A), Nov. 2, 2002, 116 Stat. 1805, 1809; Pub.L. 109-177, Title VII, §§ 711(f)(1)(B), 732, Mar. 9, 2006, 120 Stat. 262, 270; Pub.L. 109-248, Title II, § 201, July 27, 2006, 120 Stat. 611; Pub.L. 110-425, § 3(e), (f), Oct. 15, 2008, 122 Stat. 4828; Pub.L. 111-220, §§ 2(a), 4(a), Aug. 3, 2010, 124 Stat. 2372.)

Current through P.L. 112-207 approved 12-7-12

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Application Notes:*

1.  *"Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.*

    *An upward departure nonetheless may be warranted when the mixture or substance counted in the Drug Quantity Table is combined with other, non-countable material in an unusually sophisticated manner in order to avoid detection.*

    *Similarly, in the case of marihuana having a moisture content that renders the marihuana unsuitable for consumption without drying (this might occur, for example, with a bale of rain-soaked marihuana or freshly harvested marihuana that had not been dried), an approximation of the weight of the marihuana without such excess moisture content is to be used.*

2.  *The statute and guideline also apply to "counterfeit" substances, which are defined in 21 U.S.C. § 802 to mean controlled substances that are falsely labeled so as to appear to have been legitimately manufactured or distributed.*

3.  *Application of Subsections (b)(1) and (b)(2).—*

    (A)  *Application of Subsection (b)(1).— Definitions of "firearm" and "dangerous weapon" are found in the Commentary to §1B1.1 (Application Instructions). The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet. The enhancement also applies to offenses that are referenced to §2D1.1; see §§2D1.2(a)(1) and (2), 2D1.5(a)(1), 2D1.6, 2D1.7(b)(1), 2D1.8, 2D1.11(c)(1), and 2D1.12(c)(1).*

    (B)  *Interaction of Subsections (b)(1) and (b)(2).—The enhancements in subsections (b)(1) and (b)(2) may be applied cumulatively (added together), as is generally the case when two or more specific offense characteristics each apply. See §1B1.1 (Application Instructions), Application Note 4(A). However, in a case in which the defendant merely possessed a dangerous weapon but did not use violence, make a credible threat to use violence, or direct the use of violence, subsection (b)(2) would not apply.*

4.  *Distribution of "a small amount of marihuana for no remuneration", 21 U.S.C. § 841(b)(4), is treated as simple possession, to which §2D2.1 applies.*

5.  *Analogues and Controlled Substances Not Referenced in this Guideline.—Any reference to a particular controlled substance in these guidelines includes all salts, isomers, all salts of isomers, and, except as otherwise provided, any analogue of that controlled substance. Any reference to cocaine includes ecgonine and coca leaves, except extracts of coca leaves from which cocaine and ecgonine have been removed. For purposes of this guideline "analogue" has the meaning given the*